## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HEATHER CURTIS,

        Plaintiff,

v.                                  Case No. 8:23-cv-1018-JRK

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

        Defendant.

_____

## **OPINION AND ORDER**[2]

## **I.   Status**

      Heather Curtis ("Plaintiff") is appealing the Commissioner of the Social

Security Administration's ("SSA('s)") final decision denying her claim for

supplemental security income ("SSI"). Plaintiff's alleged inability to work is the

result of polycythemia, hemochromatosis, blood cancer, diabetes, scoliosis,

osteoarthritis in the spine, polycystic ovarian syndrome, migraines, neuropathy

from diabetes, and hand problems. Transcript of Administrative Proceedings

---

[1]    Mr. O'Malley was sworn in as Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Mr. O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed July 7, 2023; Reference Order (Doc. No. 17), entered July 7, 2023.

(Doc. No. 12; "Tr." or "administrative transcript"), filed July 7, 2023, at 71, 91, 230. Plaintiff protectively filed an application for SSI on April 2, 2020, alleging a disability onset date of March 17, 2020.[3] Tr. at 214-20. The application was denied initially, Tr. at 70-89, 90, 110, 112, 113-19, and upon reconsideration, Tr. at 91-103, 104, 126-27, 129-30.[4]

On September 20, 2022, an Administrative Law Judge ("ALJ") held a hearing,[5] during which Plaintiff, who appeared with a non-attorney representative, and a vocational expert ("VE") testified. Tr. at 39-69. On October 6, 2022, the ALJ issued a Decision finding Plaintiff not disabled since the date the SSI application was filed. See Tr. at 17-32.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her representative. See Tr. at 4-5 (Appeals Council exhibit list and order), 209-10 (request for review), 315-16 (brief). On March 10, 2023, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On May 8, 2023, Plaintiff commenced this action under 42

---

[3]      Although actually filed on April 14, 2020, Tr. at 214, the protective filing date of the SSI application is listed elsewhere in the administrative transcript as April 2, 2020, Tr. at 71, 91.

[4]      Some of these cited documents are duplicates.

[5]      The hearing was held via telephone, with Plaintiff's consent, because of the COVID-19 pandemic. Tr. at 41, 134-51, 172-73, 200-01, 207.

U.S.C. § 405(g), as incorporated by § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues: 1) the ALJ erred at step five in finding Plaintiff can perform work that exists in significant numbers in the national economy after "rel[ying] on erroneous testimony from the VE" and "then fail[ing] to resolve a conflict between the [Dictionary of Occupational Titles ('DOT')] and the VE testimony"; and 2) the residual functional capacity ("RFC") assigned by the ALJ "failed to account for [Plaintiff's] headaches, fibromyalgia, uncontrolled diabetes with peripheral neuropathy and polycythemia." Memorandum in Opposition to the Commissioner's Decision (Doc. No. 23; "Pl.'s Mem."), filed October 6, 2023, at 3, 16 (emphasis and citation omitted). On November 6, 2023, Defendant responded to Plaintiff's argument by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 25; "Def.'s Mem.").

After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for reconsideration at step five of whether Plaintiff can perform work that exists in significant numbers in the national economy. On remand, reevaluation of this issue may impact the Administration's consideration of the remaining issue on appeal. For this reason, the Court need not address the parties' arguments on that issue. See

Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (declining to address certain issues because they were likely to be reconsidered on remand); Demenech v. Sec'y of the Dep't of Health & Human Servs., 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that certain arguments need not be addressed when the case would be remanded on other issues).

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of

---

[6]       "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 19-32. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since April 2, 2020, the application date." Tr. at 19 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: degenerative disc disease (DDD), fibromyalgia, osteoarthritis, arthropathies, obesity, diabetes, migraines, peripheral neuropathy, gastroesophageal reflux disease (GERD), polycythemia, and anxiety." Tr. at 19 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 20 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following RFC:

[Plaintiff can] perform light work as defined in 20 CFR [§] 416.967(b) except that [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for two hours per day; can sit for six hours per day; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach, handle, finger, and feel; must avoid temperature extremes, pulmonary irritants, humidity, vibration, loud noise, hazardous machinery, and heights; can understand, remember, and carry out routine and repetitive instructions and tasks; can manage or deal with occasional changes in routine work settings or duties; cannot perform work requiring a specific production rate or pace,

> such as assembly lines; can have occasional interaction with coworkers, supervisors, and the public; and can maintain attention and concentration for two hours at a time, but does require the standard morning, lunch, and afternoon breaks.

Tr. at 22 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform past relevant work" as a "Telemarketer." Tr. at 29 (some emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("37 years old . . . on the date the application was filed"), education ("limited"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "Bagger," "Garment Sorter," and "Marker," Tr. at 29-30 (some emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . since April 2, 2020, the date the application was filed." Tr. at 32 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a

preponderance.'" <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Falge</u>, 150 F.3d at 1322 (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019); <u>Samuels v. Acting Comm'r of Soc. Sec.</u>, 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff challenges the ALJ's finding at step five that she can perform work that exists in significant numbers in the national economy. <u>See</u> Pl.'s Mem. at 3-16. According to Plaintiff, the VE's testimony differed from the DOT in several respects, and the ALJ erred by not allowing a full cross examination of the VE by her representative "regarding a reasonable explanation of how all three of the jobs the VE identified could be performed" by someone with

Plaintiff's RFC, "what resources of information she was basing her information on, and how that would affect erosion of job numbers." Id. at 6. Responding, Defendant argues that the ALJ elicited a reasonable explanation for any conflict and properly relied on that explanation.[7] Def.'s Mem. at 7.

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform." Phillips, 357 F.3d at 1239.   To make this determination, the ALJ may pose a hypothetical question to a VE. See Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)); see also Zimmer v. Comm'r of Soc. Sec., 211 F. App'x 819, 820 (11th Cir. 2006) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir.1999) ("An ALJ relies on the testimony of a [VE] to determine what level of skill the claimant achieved in his [or her] past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs.")).   "In order for a [VE]'s testimony to constitute substantial evidence, the

---

[7]        Defendant claims "Plaintiff incorrectly argues that there was an unresolved conflict between the [VE]'s testimony and the DOT and that the ALJ [erred by not] resolving this conflict." Def.'s Mem. at 7. According to Defendant, Plaintiff, by not "acknowledg[ing] the ALJ's finding regarding the conflict and discussion of the [VE]'s reasonable testimony waives the issue." Id. (citation omitted). The undersigned disagrees. Plaintiff clearly challenges the VE's "inadequate explanation" for the conflict. Pl.'s Mem. at 6. She devotes pages of her memorandum to quoting the VE testimony. Id. at 7-11. The overall point is that despite repeated attempts to ask the VE about her explanation, the VE did not answer the questions adequately. Id. at 12. So, while Plaintiff perhaps could have framed the issue more artfully, the ALJ's findings, that are based on the VE's testimony, have been squarely put at issue.

ALJ must pose a hypothetical question which comprises all of the claimant's impairments." <u>Wilson</u>, 284 F.3d at 1227 (citing <u>Jones</u>, 190 F.3d at 1229). If there are "apparent conflicts" between a VE's testimony and the DOT, the ALJ must identify them, "ask the VE about them, and explain how the conflict was resolved in the ALJ's . . . [D]ecision." <u>Washington v. Comm'r of Soc. Sec.</u>, 906 F.3d 1353, 1365 (11th Cir. 2018); <u>see also</u> SSR 00-4P, 2000 WL 1898704, at *2. The Decision must contain a "reasonable explanation for the discrepancy." <u>Washington</u>, 906 F.3d at 1356. The ALJ is required to "articulate specific jobs" that exist in the national economy "that the claimant can perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." <u>Allen v. Sullivan</u>, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).

Relevant here, the ALJ limited Plaintiff in the RFC to sitting for six hours in a day. Tr. at 22. When the ALJ asked the VE for representative jobs that a hypothetical individual with Plaintiff's RFC can perform, the VE testified the person could perform "bagger of small items," with approximately 45,000 nationwide jobs; "garment sorter," with approximately 105,000 nationwide jobs; and "marker," with approximately 150,000 nationwide jobs. Tr. at 60. The ALJ asked the VE if her testimony was consistent with the DOT, to which she replied "Yes, they are based on the DOT, Your Honor. However, the DOT does not address absence or off task, also the analysis type of contact with others in the

workplace or the light work with sitting at six hours and off task too." Tr. at 61. The VE continued, "My responses there, Your Honor, are based on my training and experience." Tr. at 61.

Plaintiff's representative [8] then cross examined the VE. The representative was confused by the testimony about those jobs because she viewed them as "sedentary work," but Plaintiff was limited in the RFC to light work with additional restrictions. Tr. at 61-62; see Tr. at 22 (RFC). The representative set out to resolve the apparent conflict. After some back and forth with the ALJ, the following exchange occurred:

> Q . . . How many numbers of bagger jobs did you say there were?
>
> A Yes, I said there were approximately 45,000. And I wanted to clarify, the job has changed over the years. The DOT description is different. We use this bagger as somebody who, for example, is in a warehouse or a distribution type center. They might include six boxed down where it's too high to get a box.
>
> Q Well, you testified in that job that you gave the numbers for, is not the job that puts it in the DOT then, is what you're saying?
>
> A What I'm saying, it's a different job –
>
> Q That no job analysis has been done on.

---

[8] Plaintiff's representative, Bonnie Cannon, is listed in the hearing transcript as an attorney. See, e.g., Tr. at 39. In fact, Ms. Cannon indicated when appointed to represent Plaintiff that she is not an attorney. See Tr. at 195-98.

ALJ: Okay, Ms. Cannon, can you please let her finish her answer and then you can ask any additional questions, okay?

Rep: Okay. We'll, she was saying that, Your Honor.

ALJ: Okay, well just let her finish her answer, Ms. Cannon, is all I'm asking.

Rep. All right, thank you.

VE: Yes, . . . I am just saying that the job has changed over the years and further experience for our observation of this job and specifically talking with supporters about the job as being part of changes to help people with limitations to be placed into jobs such as these.

We have found that they are, you know, there are differences. And what I explained before is what we have seen, is they are jobs that are bagging items in a warehouse or distribution center. And the examples are putting, for example, six boxes and baggers return the box. And that was my –

Q And that was in a warehouse —

ALJ: Again, please let her finish her answer, Ms. Cannon.

VE: No, that's completely different.

Rep: Yes, sir. Well, I object to that.

VE: That is the description.

Rep: Okay, well I object to that because your job is to testify. But when you testified to answers to the judge that there was no changes in your testimony and the DOT. And now you're telling me there is. Well, I –

VE: Yes, I said that.

Tr. at 62-64.

The representative then asked about how many jobs the VE had personally observed being performed in this manner, to which the VE said, "We have seen several of them, my team perhaps four in the past year or several --" Tr. at 64-65. The representative then surmised that the VE must be "extrapolat[ing], out of seeing four jobs that sit-down that that means that all of the other ones are performed light also?" Tr. at 65. To this, the VE responded that "I've seen and just other VEs across the United States. And we do different analyses and we come up with an approximation. It's not an exact science." Tr. at 65.

Later, the representative was attempting to understand more about how the VE came to the conclusion that a person with the assigned RFC can perform the jobs identified. After attempting some questioning about specific employers that the ALJ did not permit, the ALJ said: "[S]he extracts from sources. You can ask her what her sources are, if that's what you want." Tr. at 66. So, the representative asked, "Where did you get this information?" Tr. at 66. The VE then started to answer the question but then got sidetracked by another issue. Tr. at 67. The ALJ then determined that the representative was arguing rather than questioning and ceased cross examination. Tr. at 67-68. The ALJ permitted the representative to state her objections in a post-hearing brief, Tr. at 68, which the representative did, Tr. at 313-14.

In the Decision, the ALJ wrote:

[T]he undersigned notes that the [RFC] limits [Plaintiff] to no more than two hours per day of standing and/or walking and up to six hours per day of sitting, but does allow for lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. Therefore, the exertional demands fall between the sedentary and light exertional levels. However, the [VE] based [her] testimony on their education, training, and professional experience. The [VE] specifically noted that [her] testimony regarding light exertional work with six hours of sitting was based on [her] training and experience.

The undersigned granted the representative's request to submit a post-hearing memorandum setting forth specific objections to the [VE]'s testimony. After the hearing, the representative submitted this memorandum and argued that the [VE]'s testimony regarding the job of a garment bagger was inconsistent with the DOT. The representative further argued that the [VE]'s reliance on [her] own professional experience was insufficient to overcome this discrepancy.

However, the representative's objections are overruled. The regulations provide for the use of a [VE] to determine the transferability of skills, other jobs to which the claimant may transition, and "similarly complex issues" (20 CFR 416.966(e)). Social Security Ruling 00-4p further provides that [VE]s may be used at steps four and five of the sequential evaluation. Where there is an apparent unresolved conflict between the [VE]'s testimony and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict, after which the [VE]'s testimony may be relied upon (SSR 00-4p).

Here, the [VE] provided such an explanation. The [VE] testified that the requirements of the job of garment bagger have changed, and based on [her] personal observation of several jobs, the exertional demands are within the limitations of the [RFC]. Therefore, the undersigned has accepted the [VE]'s testimony.

Tr. at 31 (record citations omitted).

The VE's testimony, taken as a whole, does not provide substantial evidence upon which the ALJ could base the step-five findings. Perhaps, without more, a "training and experience"-type answer to an identified conflict between a VE's testimony and the DOT could suffice to meet the bar. But here, when pressed, it became evident that the VE failed in the first place to identify all of the conflicts, provided scant information about her actual experience, and did not provide the sources for the testimony about the numbers of jobs available even when asked.[9] See Biestek, 587 U.S. at 107 ("In some cases, the refusal to disclose data, considered along with other shortcomings, will prevent a court from finding that 'a reasonable mind' could accept the expert's testimony.") Reviewing the testimony in its entirety, the undersigned is unable to find that the VE's explanation is "reasonable," and reversal and remand for further consideration is required. Washington, 906 F.3d at 1356.

## V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

1.    The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final

---

[9]        Maybe the VE would have eventually disclosed the sources, but the ALJ ended the hearing with that matter outstanding.

- 14 -

decision and **REMANDING** this matter with the following instructions:

(A)     Reconsider at step five whether jobs exist in significant numbers in the national economy that Plaintiff can perform;

(B)     If appropriate, address Plaintiff's other argument in this appeal; and

(C)     Take such other action as may be necessary to resolve this claim properly.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 23, 2024.

*James R. Klindt*

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record